01

02

03

04

05

06

07

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

08  SIDNEY CHARLES RANDALL,                    )    CASE NO. C06-0798-JCC
                                              )
09          Plaintiff,                        )
                                              )
10      v.                                    )    REPORT AND RECOMMENDATION
                                              )
11  THEODORE LARSON,                          )
                                              )
12          Defendant.                        )
    _____  )

13

14                              <u>INTRODUCTION</u>

15          Plaintiff was formerly a pretrial detainee in the King County Jail ("Jail") in Seattle,

16  Washington.  While incarcerated in the Jail, plaintiff disobeyed a corrections officer's command

17  and the officer consequently turned off the water in plaintiff's cell for approximately 30 hours,

18  depriving him of drinking water for that time.  Plaintiff sued the officer responsible for turning off

19  the water under 42 U.S.C. § 1983, alleging that this action violated plaintiff's constitutional rights.

20  After a period for discovery concluded, plaintiff and defendant both filed motions for summary

21  judgment.  Having reviewed the parties' submissions, the Court recommends that plaintiff's

22  motion be granted and that defendant's motion be denied.

REPORT AND RECOMMENDATION
PAGE -1

01

BACKGROUND

02     Plaintiff and defendant have somewhat different versions of the facts underlying this

03 lawsuit.[1]  Both parties agree, however, on the fundamental outline of the incident in question.  On

04 August 5, 2005, plaintiff was incarcerated on the tenth floor of the Jail.     [2]   (Dkt. #65 at 2).

05 Corrections Officer Theodore Larson, the sole defendant here, was on duty and let plaintiff out

06 of his cell twice that day.  The first time plaintiff was let outside for recreation and remained

07 outside for approximately seventy minutes.  The second time, plaintiff was released into the

08 "dayroom" where he could choose to either take a shower or use a telephone.  Plaintiff chose to

09 use a telephone and did so for approximately forty minutes when a detail of officers arrived to

10 escort plaintiff to court.  (*Id*.)

11     Plaintiff returned from court at 1:05 p.m. and reentered his cell.[3]  (*Id*.)  From this point on,

12 the parties' versions of the facts differ.  Plaintiff alleges that because he had missed the opportunity

13 to take a shower, he asked Officer Larson if he could take a quick shower before returning to his

14 cell.  (Dkt. #66, Ex. C).  According to plaintiff, Officer Larson replied that he could not because

15 his recreation time had elapsed.  (*Id*.)  Plaintiff then asserts that he told Officer Larson that he

16 would wash up in his cell, using the water in his sink.  Officer Larson allegedly responded, "No,

17

18     [1] Plaintiff's version is largely based upon declarations submitted by plaintiff and two
inmates who witnessed the incident: Douglas E. Gallagher and James Buxton.  (Dkt. #7, Ex. B

19 and C; Dkt. #66, Ex. C).  Defendant's version is based upon his own declaration.  (Dkt. #65).

20     [2] The record does not disclose the nature of the charges that plaintiff was facing, nor
whether he was eventually convicted of any offense.  The Court notes that plaintiff is currently

21 incarcerated in the Southern New Mexico Correctional Facility in Las Cruces, New Mexico.

22     [3] Plaintiff states that he returned from a medical appointment (Dkt. #66 at 2), instead of
an appearance in court, but this difference is immaterial to his claim here.

REPORT AND RECOMMENDATION
PAGE -2

01  you won't." (*Id.*)  Despite this command, plaintiff proceeded to wash himself in his cell; Officer

02  Larson saw this and again commanded him to stop.  Plaintiff responded, "You can't stop me from

03  washing myself." (*Id.*)  Officer Larson replied, "Want to make a bet?" *Id.*)  Officer Larson then

04  turned off the water supply to plaintiff's cell and allegedly told him, "Your [sic] going to burn in

05  hell, you better take some barbecue sauce with you it's going to be hot!" ( *Id.*)  Plaintiff also

06  contends that defendant told him that his water would not come back on for "a long, long time."

07  (Dkt. #66, Ex. C).

08          Over the course of the next 30 hours, plaintiff alleges that he repeatedly complained about

09  being thirsty and about his cell smelling bad from the accumulation of feces and urine in his toilet.

10  (Dkt. #66, Ex. C at 2).  After 30 hours, plaintiff fainted.  (Dkt. #52, Ex. G at 2).  He was treated

11  by a nurse in his cell, who revived him by giving him drinking water and instructed him to request

12  further medical treatment if he did not feel better the next day.  (Dkt. #66 at 2).  Plaintiff claims

13  that he hurt his back when he fainted and that he suffers from back pain to this day.  (*Id.*)  Shortly

14  after the nurse saw plaintiff, at approximately 8:00 p.m. on August 6, 2005, corrections officers

15  turned the water back on in plaintiff's cell.[4]

16          Defendant alleges, in contrast to the version of the facts recounted above, that plaintiff

17  started complaining loudly to him after he returned from court that he had been unable to shower.

18  (Dkt. #65 at 2).  Defendant alleges that after he told plaintiff that he was not permitted to wash

19  up in his cell, plaintiff cursed at him and threatened to flood his cell. ( *Id.*)  According to

20  defendant, he warned plaintiff that if he flooded his cell, then defendant would turn off the supply

21  _____

22          [4] Defendant's shift ended at 2:25 p.m. on the preceding day, August 5, 2005, and he did
not return to work on plaintiff's floor until August 18, 2005.  (Dkt. #65 at 4).

REPORT AND RECOMMENDATION
PAGE -3

01 of water to his sink and toilet. (*Id.*) Despite this warning, defendant alleges that he saw plaintiff

02 at approximately 1:15 p.m. in his cell, "naked, splashing water from his running sink all over his

03 cell floor." (*Id.* at 3). Defendant further states that "[a] pool of water was forming at his cell door

04 and was spreading out into the dayroom." (*Id.*) Defendant then turned off the water to plaintiff's

05 cell. (*Id.*) Further, defendant imposed an additional sanction by noting in a log book maintained

06 by corrections officers that plaintiff would lose an hour of time outside his cell the following day.

07        Defendant does not directly contradict plaintiff's assertion that he requested and was

08 denied drinking water from Jail officials over the next 30 hours. Instead, defendant maintains that

09 it is "standard procedure" under these circumstances to offer an inmate the opportunity to get a

10 drink outside the cell and to flush his toilet once during a 24-hour period. (Dkt. #65 at 4).

11 Defendant, however, does not offer any specific evidence, such as a declaration by a corrections

12 officer, that plaintiff either requested or was offered such an opportunity during the incident in

13 question.

14        On July 7, 2006, plaintiff filed the instant civil rights complaint, naming Officer Theodore

15 Larson as the sole defendant. (Dkt. #7). Defendants filed their answer on September 11, 2006.

16 (Dkt. #15). On September 12, 2006, the Court issued an Order setting deadlines for discovery

17 and dispositive motions. (Dkt. #16). These deadlines were extended twice at the request of

18 plaintiff. (Dkt. #28 & 36).

19        On May 7, 2007, plaintiff filed a motion for summary judgment. (Dkt. #52). Defendant

20 filed a response on May 29, 2007. (Dkt. #54). On July 17, 2007, defendant filed a motion for

21 summary judgment. (Dkt. #64). Plaintiff filed a response on August 3, 2006. (Dkt. #66). The

22 parties' motions for summary judgment are now ready for review.

REPORT AND RECOMMENDATION
PAGE -4

01

<u>DISCUSSION</u>

02

<u>Summary Judgment</u>

03       Summary judgment is proper only where "the pleadings, depositions, answers to

04   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

05   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

06   of law." Fed. R. Civ. P. 56(c);*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).   The

07   court must draw all reasonable inferences in favor of the non-moving party.   *See F.D.I.C. v.*

08   *O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79

09   (1994).

10       The moving party has the burden of demonstrating the absence of a genuine issue of

11   material fact for trial. *See Anderson*, 477 U.S. at 257.  "When the moving party has carried its

12   burden under Rule 56(c), its opponent must do more than simply show that there is some

13   metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead

14   a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*

15   *v. Harris*, __U.S.__, 127 S. Ct. 1769, 1776 (2007) (internal citation and quotation omitted).

16   Conclusory allegations in legal memoranda are not evidence, and cannot by themselves create a

17   genuine issue of material fact where none would otherwise exist. *See Project Release v. Prevost,*

18   722 F.2d 960, 969 (2nd Cir. 1983).

19       In order to sustain a cause of action under 42 U.S.C. §1983, plaintiff must show (i) that

20   he suffered a violation of rights protected by the Constitution or created by federal statute, and

21   (ii) that the violation was proximately caused by a person acting under color of state law.   *See*

22   *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  To satisfy the second prong, plaintiff

REPORT AND RECOMMENDATION
PAGE -5

01    must allege facts showing how individually named defendants caused or personally participated

02    in causing the harm alleged in the Complaint.  *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir.

03    1981).

04         Defendant argues initially that plaintiff has failed to argue, much less show, that the shut-

05    off of his water for 30 hours violated a federal statute or constitutional provision.  (Dkt. #64 at

06    7).  Defendant points out that plaintiff relies in his complaint on a Washington regulation (WAC

07    289-20-255-2) as the legal basis for his right to drinking water, a toilet, and a sink.  (Dkt. #7 at

08    4).  While it is true that plaintiff relies upon this particular regulation in one part of his complaint,

09    he also relies upon the Eighth and Fourteenth Amendments of the Constitution in another part of

10    the complaint.  (*Id*. at 22).  In addition, plaintiff cites several federal cases in a portion of his

11    motion for summary judgment that he labels, "Memorandum of Law."  (Dkt. #52 at 3).  Therefore,

12    plaintiff has satisfied the threshold requirement of 42 U.S.C. §1983 that he allege a violation of

13    his federal civil rights.

14         The Eighth Amendment prohibits the cruel and unusual punishment of prisoners, while the

15    punishment of pretrial detainees is prohibited by the Fourteenth Amendment.  *Bell v. Wolfish*, 441

16    U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to

17    an adjudication of guilt in accordance with due process of law.")  Because plaintiff was a pretrial

18    detainee at the time of the events at issue in this case, his substantive claim is reviewed under "'the

19    more protective fourteenth amendment standard.'"  *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir.

20    2004) (quoting *Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987)).   *But cf. Frost v.*

21    *Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) ("Because pretrial detainees' rights under the

22    Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment,

REPORT AND RECOMMENDATION
PAGE -6

01  however, we apply the same standards.")

02        The test for identifying unconstitutional punishment at the pretrial stage of a criminal

03  proceeding requires a court to examine "whether there was an express intent to punish, or

04  'whether an alternative purpose to which [the restriction] may rationally be connected is assignable

05  for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'"

06  *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 538). "For a

07  particular governmental action to constitute punishment, (1) that action must cause the detainee

08  to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to

09  punish the detainee." *Id.* at 1029. Further, "to constitute punishment, the harm or disability

10  caused by the government's action must either significantly exceed, or be independent of, the

11  inherent discomforts of confinement." *Id.* at 1030.

12        "[M]aintaining institutional security and preserving internal order and discipline are

13  essential goals that may require limitation or retraction of the retained constitutional rights of both

14  convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 546. *Accord Jones*, 393 F.3d at 932

15  ("Legitimate, non-punitive government interests include ensuring a detainee's presence at trial,

16  maintaining jail security, and effective management of a detention facility.") Moreover,

17  corrections administrators "should be accorded wide-ranging deference in the adoption and

18  execution of policies and practices that in their judgment are needed to preserve internal order and

19  discipline and to maintain institutional security." *Bell*, 441 U.S. at 547.

20        Thus, the question here is whether defendant's actions either (1) were expressly intended

21  to punish plaintiff or (2) constituted punishment because they significantly exceeded the inherent

22  discomforts of confinement. The record at this stage of the proceedings does not appear amenable

REPORT AND RECOMMENDATION
PAGE -7

01  to summary judgment on the former question.  Plaintiff alleges that defendant stated that plaintiff

02  would "burn in hell," and such a statement, if actually uttered, supports a theory that defendant

03  was angry and was trying to inflict punishment on plaintiff.  Although defendant does not

04  specifically deny having made this statement, nor does defendant admit it.  Moreover, even if

05  defendant had made the statement, the words alone would not conclusively demonstrate that

06  defendant's action was expressly intended to punish.  After all, plaintiff concedes that defendant

07  warned him not to wash up in his cell, and that he proceeded to do so anyway.  Defendant's harsh

08  statement could be viewed as secondary harassment that accompanied a legitimate action taken

09  to preserve internal order and discipline.  *Cf. Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.

10  1987) (verbal harassment alone is insufficient to state a claim under § 1983).

11       The Court reaches a different conclusion regarding the second question,  *i.e.*, whether

12  defendant's actions constituted punishment because the harm caused by the actions significantly

13  exceeded the inherent discomforts of confinement.  It is undisputed that defendant's action

14  deprived plaintiff of drinking water and the ability to flush his toilet for 30 hours.  While

15  defendant's initial decision to turn off plaintiff's water supply seems a legitimate response to

16  plaintiff's act of defiance, the continuation of this deprivation for 30 hours seems excessive.  At

17  some point, which the Court  need not identify here, the disciplinary purpose of the deprivation

18  crossed the line into punishment.  Certainly, it cannot be said that depriving an inmate of water for

19  30 hours is an inherent discomfort of confinement.  *See Hope v. Pelzer*, 536 U.S. 730 (2002)

20  (Alabama corrections officer violated a prisoner's Eighth Amendment rights when the prisoner

21  was handcuffed to a hitching post for approximately seven hours in the hot sun);  *see also*

22  *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995) (holding that subjecting a

REPORT AND RECOMMENDATION
PAGE -8

01  prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within

02  the meaning of the Eighth Amendment).

03        In sum, although there is some dispute as to the facts underlying this lawsuit, there is no

04  dispute as to the material facts.  Plaintiff used the sink in his cell to wash himself after being told

05  not to do so by defendant. Defendant then shut off plaintiff's water for thirty hours, causing

06  plaintiff to faint and fall in his cell.  These undisputed facts amount to punishment under *Bell* and

07  its progeny, and plaintiff is therefore entitled to summary judgment.

08                                                    Relief

09        In his complaint, plaintiff requests relief in the form of "compensatory and punitive

10  damages to be determined at trial."  (Dkt. #7 at 23).   Under the Prison Litigation Reform Act,

11  plaintiff must show a physical injury in order to qualify for damages for mental or emotional injury.

12  *See* 42 U.S.C. § 1997e(e).  As previously mentioned, plaintiff asserts that he has suffered from

13  back pain since his fall in the cell, and plaintiff attaches numerous exhibits to his complaint that

14  purport to show the extent of this injury.  (Dkt. #7, Ex. D-Z).  Defendant has not addressed the

15  issue of relief in any of the pleadings filed thus far in this case.  In any case, the measure of

16  damages is a question of fact that is better suited to resolution through trial or mediation than

17  through summary judgment.  *See, e.g., Advanced Team Concepts, Inc. v. United States*, 77 Fed.

18  Cl. 111, 113 (2007).  Accordingly, the Court is unable to recommend what damages, if any,

19  should be awarded to plaintiff.[5]

20  _____

21        [5] In addition to damages, it appears that plaintiff may be entitled to recover the costs
    associated with this litigation.  *See* 28 U.S.C. § 1920; *Merrell v. Block*, 809 F.2d 639, 642 (9th
22  Cir. 1987).

REPORT AND RECOMMENDATION
PAGE -9

01

<u>CONCLUSION</u>

02       For the foregoing reasons, plaintiff's motion for summary judgment should be granted and

03 defendant's motion for summary judgment should be denied.  Further, to assist the Court in

04 resolving the issue of damages, the Court recommends appointing counsel to represent plaintiff

05 under 28 U.S.C. § 1915(e).  A proposed Order accompanies this Report and Recommendation.

06       DATED this <u>14th</u> day of September, 2007.

07

08                     Mary Alice Theiler
                        United States Magistrate Judge

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -10